## JULIUS A. JACKSON'S LESSEE v. HASTY and CANNON.

Court of Common Pleas.  Sussex.  November 27, 1800.

*Wilson's Red Book, 320.*\*

*Ridgely.*  There are three objections on the face of this demurrer to plaintiff's title.  First, it appears that the patentee left a son, who therefore, by the laws of Maryland, where these lands lay at that time, was sole heir; and yet plaintiff shows no claim under him, nor is he found to be dead.  But plaintiff should recover by the strength of his own title.  4 Burr. 2484, 2 Esp.N.P. 455.  Secondly, it appears defendant's father was possessed of those lands forty years ago, which excludes a possibility of plaintiff's having been possessed within twenty years.  Thirdly, plaintiff has only shown a conveyance bond from Lockerman, who was the heir of patentee's eldest daughter, which is not a legal title, nor sufficient to recover on in ejectment, 2 Term 696.

It will be urged the acceptance in the Orphans' Court and their adjudication salves the objection of a defect of title in assignee. If the defendant, John Cannon, had no notice of those proceedings, he was not bound by them.  As the demurrer refers to a particular copy of a record, no other was evidence, and that does not show that John Cannon was a party.  The practice in rent is to bind no person in such case without giving the party notice, but here there has been no notice.  Formerly no notice was given, and then certainly the parties intended to be affected were not bound.  The conveyance bond from Thomas Lockerman was not accompanied by possession and therefore passed no right of possession.  It was at best but a contract to convey, and the deed signed by the other heirs does not affect defendant's right.

*Vining.*  Plaintiff in this case has done all he could or ought to do.  He accepted the lands at a lawful valuation and has paid

---

\* For earlier proceedings in this case see above, *Wilson's Red Book, 208.* This case is also reported in *Rodney's Notes,* November 28, 1800.

the respective heirs, except the defendant; and it appears there was a full and lawful tender of his money to him, which he refused. His refusal is equivalent, with respect to us, to his receiving the money. It is not necessary to produce authorities, for the law will not be denied that the act or decision of a court of competent jurisdiction, unappealed from, is obligatory in all respects and in all places. Nor was notice in this case necessary, for the Act of Assembly requires none. And being expressly authorized to adjudge lands to an assignee, the adjudication must be binding.

*Bayard.* The plaintiff is entitled to judgment in this case if he should be found entitled to only a part of the lands sued for; the law is now settled that tenant in common may declare for the whole and recover a moiety, and it is also settled that the parties entitled under our Act of Assembly to an intestate's estate are tenants in common. The deed in this case, if I have rightly calculated, passes 20/21 parts and only leaves to John Cannon 1/21 part; there can be no objection to this portion of the title, except the want of possession. The Court see on the demurrer that the sister took possession of the lands, in the absence of the brother, which is never deemed adverse, but by curtesy, 2 Esp.N.P. 434. John Cannon, defendant's father, got possession with his wife and was tenant by the curtesy until his death, within twenty years ago. Upon his death, the right fell as to one-fourth among his children, who, except defendant and Ann, have signed this deed. The plaintiff has clearly, therefore, the right of possession.

But the acceptance and adjudication in this case passed to plaintiff the whole right of the patentee's son, Constantine Hudson, by 1 Del.Laws 292—upon acceptance etc. the deceased's heirs shall be forever debarred of all his, her or their right, title, and demand etc. and the same shall be held etc. as freely, and fully as the intestate held the same. And by the Act [1 Del.Laws] 418, the Orphans' Court, upon application of an assignee etc. "shall have the same power, and authority" etc. to adjudge etc. to the representatives, or their assigns etc. as they may or can do under the preceding Act. The proceedings being of record imply a notice, and as no other is required by either of the Acts, no other is necessary. When a Chancery deposition is produced, no notice of the taking need accompany it. These Acts are like the Statutes of Uses and of themselves pass the legal title. The jurisdiction of the Orphans' Court may be compared in this respect to the execution of a power, which, when executed, takes its validity from the instrument giving the power, which is in this case the Act of Assembly. The case of *Bail v. McCullough* in New Castle seems to have settled this question. There the

defendant in the name of himself and wife petitioned and obtained an order for the division, etc. and then for the valuation of his wife's father's (one Eve's) land; the lands were adjudged to McCullough alone, and it was held on objection that the adjudication was valid.

*Wilson.* If the defendant's deed should be effectual, it does not go so far as has been alleged. Supposing Constantine to be dead, he left four sisters, one of whom died without issue; the representatives of another signed the deed which passes one-third of the whole. Defendant's mother, another sister, left seven children, of whom defendant was eldest and entitled to a double share; and five of his brothers signed defendant's deed, which gives five-eighths of one-third more, which being added to the before mentioned one-third, makes in the whole thirty-nine seventy-two parts, which is very little more than one-half. The deed could pass no more of the right of possession than it did of title; and it appears by the pretensions, which are before the Court and form a part of the evidence, that plaintiff is in the actual possession of the full one-half of the lands named in the declaration, if not more, of which John Hudson died seised.

The question therefore in this cause is whether the adjudication of the Orphans' Court and acceptance by plaintiff passes the legal estate to him, when he had only a conveyance bond from the person legally entitled to the acceptance. It has not been contended that an alienation bond is evidence of legal title in ejectment; for this would be to supersede the necessity of the Act for acknowledgment of deeds, and of that for conveyances by executors and administrators, and of decrees in Chancery for specific performance, and to do away the natural and legal difference between an absolute conveyance and a contract only to convey. If the Act of Assembly in [1 Del.Laws] 292, which declares the effect of an adjudication, had also authorized the Orphans' Court to adjudge to an assignee of the person who had the right of acceptance, there would have been no room to question the plaintiff's title. There is no doubt that an adjudication and acceptance legally made under either Act is a valid species of conveyance, and by the Act [1 Del.Laws] 292, as no person but an heir could accept, the Act, to declare the adjudication effectual, necessarily transfers the right that had been in intestate to the acceptor; but the latter Act in [1 Del.Laws] 418, which directs an adjudication to the assignee, does not declare the effect of such acceptance, nor is it necessary that the provision of the first Act should be extended in this respect to the latter one, for the acceptance by assignee, being a legal acceptance, is also a

legal conveyance. Such acceptance by an assignee who has a legal title will pass the legal estate of intestate, or equitable, if intestate had no other; but if the assignee has an equitable title only, the acceptance will make his title to the whole the same that it was for part.

If we suppose the effect more extensive it will follow that assignor's residue of estate, or legal estate which he had not parted with, is taken from him without and beyond his contract. Suppose the assignor had not intended to convey, because of fraud on assignee's part of the contract; as the Act requires no notice, court is not bound to give it, and the party is not concluded by it. The adjudication would in such case have all the effect of a decree for specific performance without the knowledge of the party. It has been said the term "assignee" in the latter Act was made in contemplation of merely equitable titles; but it does not follow that the legislature intended to have given the assignee a better title to the whole than he had obtained for part. "Assigns" is a comprehensive term; as applied to realty it extends to the heirs and their assignees, to assignees of assignees, and to heirs of assignees, Co.Litt. 384b. It embraces feoffees, donees, bargainees, and devisees; it extends to legal and equitable, real and personal rights. It was therefore the fittest expression; and the Orphans' Courts are prevented, on the application of assignees, all inquiry as to the validity of his title, their adjudication being only coextensive with it and without prejudice. If we suppose the Orphans' Court authorized in such case to inquire into the adversary claims of assignor and assignee, and that therefore their adjudication passed the estate which had been in intestate, curing all defects in the conveyance from assignor to assignee, as is contended in this case, then their decision would be final, unless appealed from, and Chancery could not interfere. But the very term "assigns," as well as the not requiring notice to the parties interested, evince that the adjudication, although a legal mode of conveyance, cured no defects; in the same manner as a sheriff's deed has been adjudged to do. The execution of a power takes its validity from the instrument that gives it, which is the bond in this case, though the Orphans' Court are appointed by law to execute it; and if the analogy to powers is admitted, [were] a legal estate given by the court, where only an equitable was authorized, the execution of their power would be void for excess. The case of *Bail v. McCullough* was not that of an assignee, but was only the acceptance of an husband with the wife's assent. If this had been denied him, it would have been a denial of the wife's right, for her issue probably may inherit, and the husband pays the valuation.